FILED

2009 Nov-04 PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TONYA M. PRUETT, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]   5:09-CV-00272-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.      Introduction.

The claimant, Tonya M. Pruett ("Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").   Ms. Pruett timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Pruett was thirty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision and she has a seventh grade education. (Tr.

at 39.)   Her past work experiences include employment as a cook helper/bakery clerk, a denture finisher, and an electronic assembler.  (*Id.* at 19.) Ms. Pruett claims that she became disabled on April 7, 2006, due to osteoarthritis, degenerative disc disease, rotator cuff tendonitis/bursitis, knee problems, carpal tunnel syndrome, irritable bowel syndrome, bipolar disorder, panic attacks and depression.   (*Id.* at 162.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty  v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."   20 C.F.R.  §§ 404.1520(a)(4)(i),  416.920(a)(4)(i).   If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.   20 C.F.R.  §§  404.1520(a)(4)(ii),  416.920(a)(4)(ii).   These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340,

1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id*.  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id*.  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id*.  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Pruett meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision.  (Tr. at 13.)  He further determined that Ms. Pruett has not engaged in substantial gainful activity since the alleged onset of her disability.  (*Id.*)  According to the ALJ, Plaintiff's "status post cervical fusion x 2, degenerative disc disease, mood disorder, bilateral carpal tunnel syndrome, and rotator cuff tendonitis/bursitis" are considered "severe" based on the requirements set forth in the regulations (*Id.*)  However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*)  The ALJ did not find Ms. Pruett's allegations to be totally credible, and he determined that she has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 417.967(b), subject to the following limitations:

The claimant requires a sit/stand option during an 8-hour workday. The claimant's ability to push pull with her left upper extremity is limited to frequently. The claimant is restricted to occasionally climbing ramps and stairs. The claimant is restricted to occasionally crouching, balancing, stooping, and crawling. The claimant is restricted from climbing ladders, ropes and scaffolding. The claimant is restricted from reaching overhead with her left shoulder. The claimant's visual acuity is limited for both near and far vision, but she is able to drive a motor vehicle and see small parts. She is to avoid concentrated exposure to extreme cold, wetness, and vibrations. She is restricted from working around dangerous machinery and unprotected heights. She is capable of remembering locations, work procedures and short simple instructions. She is restricted from receiving detailed instructions. She is able to perform simple 1-2 step jobs. She is able to maintain attention for 2 hour periods during an 8-hour workday.

(Tr. at 13, 16.)  The  ALJ accepted the vocational expert's testimony that, given Ms. Pruett's RFC, she is unable to perform any of her past relevant work.  The ALJ determined that Ms. Pruett is a "younger individual," and has a "limited education," as those terms are defined by the regulations. (*Id.* at 19.)  After considering her "age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Specifically, representative occupations such as "ticket marker," "photocopy operator" and "film processor" were found to be compatible

with Ms. Pruett's RFC, each with hundreds of jobs regionally and around 100,000 jobs nationally. (*Id.* at 20.)

The ALJ concluded his findings by stating that Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that therefore she "was not under a disability, as defined in the Social Security Act, from April 7, 2006 through the date of this decision." (*Id.* at 20.)

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The

substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Ms. Pruett alleges that the ALJ's decision should be reversed for three reasons.  She contends, first, that the ALJ erroneously failed to regard her

knee condition, irritable bowel syndrome ("IBS"), and pain resulting from constipation as severe impairments.   Second, that the ALJ improperly discounted or refused to accept the opinion of an examining physician as to her limitations.  Third, that the ALJ failed to apply 42 U.S.C. § 423(d)(5)(A) to the pain and other non-exertional limitations and symptoms imposed by her impairments.

A.     Severe Impairment.

After reviewing the record and considering the testimony at the hearing, the ALJ found that "the evidence is not consistent with any severe knee problems."   (Tr. at 18).   Plaintiff asserts that this finding is contradicted by two diagnostic imaging tests,  multiple examinations that describe knee problems, and Plaintiff's own testimony that her knees "hurt really, really bad."

The examinations cited by Plaintiff span a period of seven years, and include the reports of two of her physicians, Dr. Chu and Dr. Shikhtholth. Doctor Chu's records contain descriptions of tenderness and crepitation, (Tr. at 290) and a diagnosis of right knee osteoarthritis in June of 2006. (*Id.* at 276.)  An examination by Dr. Shikhtholth in June of 2008 resulted in an

assessment of "bilateral knee pain." (Tr. at 431.) Plaintiff also points to an MRI of the right knee conducted in April of 2001 which indicated "evidence of contusion," (Tr. at 303) and an MRI of the left knee in September of 2003 which noted a "[p]resumed small bone bruise." (Tr. at 294.) Whether or not this evidence would suffice to support a finding of a severe impairment, this court is limited to determining whether the ALJ's finding to the contrary is supported by substantial evidence.

The ALJ based his decision on the inconsistency of the evidence with any severe knee problems, most notably that Plaintiff "has a normal gait, and she is able to squat and arise, as well as kneel and arise." (Tr. at 18.) This observation by the ALJ finds ample support in the record. The notes of Dr. Aggarwal following an examination on June 20, 2006, indicate that Plaintiff was "able to walk on heels and toes and squat without difficulty." (Tr. at 270). The same conclusion was reached by Dr. Lary after both personally examining Plaintiff and reviewing her medical records, including the above-mentioned MRI reports. Dr. Lary observed that the MRI results indicated that all bones and ligaments were intact. A report following his evaluation of Ms. Pruett states that she is "[a]ble to walk normally. Is *easily*

able to heel walk and toe walk. Is *easily* able to assume and arise from a squat position and a kneeling position." (Tr. at 336)(emphasis added). Both Dr. Lary and Dr. Aggarwal discuss Plaintiff's back and neck problems, yet no description of any knee problem found its way into either of their diagnoses. (Tr. at 271, 337.)

Support for the ALJ's decision can also be found within the very reports which Plaintiff cites. Plaintiff emphasizes Dr. Shikhtholth's June 26, 2008 assessment of knee pain, yet no mention of knee pain is made in a majority of Dr. Shikhtholth's prior assessments, despite Plaintiff's claim that the knee pain predated the back pain. Moreover, that same June 26, 2008 assessment of "[b]ilateral Knees [sic] Pain, worse on the left" also states that no detectable limitations of the left knee's range of motion could be found.[1] Dr. Chu's reports likewise contain statements which contradict the alleged severity of Plaintiff's knee condition. While Dr. Chu's records indicate complaints of right knee pain as early as April of 2001, an entry on September 7, 2004, states "knees better—running more." (Tr. at 290.)

---

[1] Dr. Shikhtholth's description of Plaintiff's knee pain as being "worse on the left" is also seemingly at odds with Dr. Chu's description of "right knee pain" and diagnosis of only "right knee osteoarthritis."

Plaintiff testified to her knee pain at the hearing, but as the ALJ noted, she also testified that she can sit for 30-40 minutes before needing to stand up, and can walk or stand for 20-40 minutes before needing to change positions.  While he did not find this to be evidence of a severe impairment, the ALJ did accord to Plaintiff the benefit of the doubt, and included a sit/stand option as part of her residual functional capacity. Notwithstanding Plaintiff's assertions, the ALJ's decision to not treat Plaintiff's knee condition as a severe impairment finds substantial support in the record.

Plaintiff next argues that the ALJ should have treated Plaintiff's irritable bowel syndrome ("IBS") with chronic constipation as a severe impairment.  The ALJ did find Plaintiff's complaints of IBS and the pain and discomfort caused by constipation to be "credible." (Tr. at 18.)  But he concluded that "[t]here is no evidence . . . that this is disabling."  (*Id.*)

The Social Security Act "defines 'disability' in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace." *Bowen v. Yukert*, 482 U.S. 137, 146 (1987) (quoting *Heckler v. Campbell*, 461 U.S. 458, 459-60 (1983)).  As stated in the regulations, "[a]n

impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  Thus, "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  The claimant bears the burden of demonstrating the existence of such a disability.  See *Carnes v. Sullivan*, 963 F. 2d 1215, 1218 (11th  Cir. 1991).  In finding that Plaintiff's IBS and constipation did not constitute a severe impairment, the ALJ determined that Plaintiff has failed to meet this burden.

Plaintiff further contends that her IBS and  chronic constipation significantly limit her physical or mental abilities to do basic work activities. The record, however, indicates a paucity of evidence connecting the IBS or constipation to any work-related limitations.  While Plaintiff's brief cites a number of examinations which support the existence of her medical

condition,[2] none of these assess any limitations on her ability to perform basic work activities.  An evaluation of Ms. Pruett on October 24, 2006, does contain a description of Plaintiff's report that she "last worked at Publix in April 2006 but left this job due to 'pain and irritable bowel,'" (Tr. at 351), but this is contradicted by a subsequent statement in the same report, stating that the cause of her departure was actually back surgery.  (Tr. at 353.)   Dr. Lary's examination dated October 3, 2006, contained an assessment of Plaintiff's limited ability to perform certain functions, but these limitations are all attributed exclusively to Plaintiff's neck and back pain.  (Tr. at 337.)  No functional limitations due to IBS or constipation are to be found anywhere in the record.

Apparently aware of this lack of evidence, the ALJ provided an opportunity for Plaintiff to present it at the hearing, and specifically inquired about it.  Referring to Plaintiff's complaints of IBS and constipation, the ALJ attempted to elicit evidence regarding any specific limitations:

---

[2]The evidence in the record concerning the Plaintiff's complaints of IBS and constipation is far from unmixed.  But while the  ALJ's finding of credibility may not have been inescapable, it is supported by substantial evidence.  As such, this Court will not revisit the ALJ's finding on the issue.

Q. [T]he problem you have with your bowels, does it

keep you from being able to do anything?

A. Well, I can't go to the bathroom.

Q. Okay, other than going to the bathroom.

A. When I can't go, I'm irritable. When I'm hurting so

bad, I've already got my neck's [sic] hurting, you know,

you get to a point where everything hurts. It's just, it's

just enough.

Q. Okay.

(Tr. at 62.)  The irritability and discomfort here described do not dictate a

finding of disability.  Plaintiff describes the pain from her IBS as merely

compounding the pain from her neck and elsewhere, yet she described this

pain as "manageable" and "under control" at the time of the hearing.  (Tr.

at 51.)  The absence of any work-related limitations described by Plaintiff's

doctors, or by her own testimony when specifically asked about it at the

hearing, supports the ALJ's conclusion that the IBS and pain from

constipation do not constitute a severe impairment.  Close consideration of

the entire record supports the reasonableness of the ALJ's decisions not to treat either the knee pain or bowel problems as severe impairments.[3]

B.      Physician Opinion.

While Plaintiff's first contention fails partially on account of the ALJ's reliance on the opinion of Dr. Lary, Plaintiff's second contention is that Dr. Lary's opinion was improperly ignored.  The ALJ's decision included the following expression of the weight afforded to the various physicians' opinions:

> [S]ome, but not great weight is given to the opinions of the DDS consultants . . . .Greater weight is given to the opinion of Dr. Lary . . . . Doctor Lary had the opportunity to personally evaluate the claimant. This opinion is not given significant weight, as it is general and does not provide any specific limitations. Significant weight is given to the opinion of Dr. Petrella . . . . Doctor Petrella had the opportunity to personally evaluate the claimant. . . . Doctor Petrella provided specific work related restrictions.

(Tr. at 18-19.)  Plaintiff describes this as a "confused finding," (Doc. 8 at 17) and argues that "by this confused statement, the ALJ is in essence rejecting

---

[3]The court additionally notes that both the knee pain and IBS were complained of for several years prior to April 7, 2006, the date Plaintiff claimed disability.  The fact that neither condition prevented or impaired Plaintiff's ability to work for a number of years further supports the ALJ's decision that they do not constitute severe impairments.

the opinion of Dr. Lary." (*Id.*)  To the contrary, any confusion here is Plaintiff's own.  The ALJ did not "reject" Dr. Lary's opinion, but  explained his evaluation of the medical evidence as required by the regulations.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).[4]

As the ALJ noted, Doctor Lary personally evaluated Ms. Pruett, while the DDS consultants did not.  Accordingly, the ALJ properly determined that Dr. Lary's opinion was entitled to "[g]reater weight".  (Tr. at 18.)  *See* 20 C.F.R. §  404.1527(d)(1) ("Generally, we will give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").  On the other hand, the record indicates that Dr. Lary examined Plaintiff on a single occasion, and is therefore  not a "treating source" for the purposes of the regulations.  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)).  Thus, Dr. Lary's opinion was not entitled to controlling weight.  *Id.*

---

[4]These provisions require consideration of the following factors: (1) Examining relationship; (2) Treatment relationship, including its length, nature and extent; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other relevant factors. 20 C.F.R. §§  404.1527(d)(1-6), 416.927(d)(1-6).

An additional factor considered by the ALJ was the level of specificity in the doctors' conclusions.  While Dr. Lary assessed only general limitations on Plaintiff's abilities (Tr. at 337), Dr. Petrella articulated specific, work-related restrictions.  (Tr. at  354.)  As such, the ALJ determined that Dr. Petrella's opinion was entitled to "significant weight," while Dr. Lary's was not.  In sum, Dr. Lary's opinion  was afforded an intermediate weight: greater than that of the non-examining physicians, but less than Dr. Petrella's.  Far from being a "confused finding", this is precisely the sort of evaluation which is required by the regulations.  The ALJ's decision was a proper exercise of his duty to weigh the medical evidence as required by 20 C.F.R. § 404.1527(d) and § 416.927(d).

The allegation that the ALJ "rejected" Dr. Lary's opinion is easily dispensed with.  As discussed in Part A, *supra*, Dr. Lary's examination of Plaintiff played a significant role in the ALJ's decision not to treat Plaintiff's knee problems or IBS as severe impairments.   In his decision, the ALJ specifically cites Dr. Lary's findings regarding Plaintiff's ability to "walk normally" and "to heel and toe walk." (Tr. at 17.)   The limitations assessed by Dr. Lary  also appear to have substantially informed the ALJ's assessment

of the Plaintiff's residual functional capacity.  Dr. Lary found impairments in Plaintiff's ability to "sit, stand, walk, lift, carry, bend, squat, and reach." (Tr. at 337.)  Similarly, the RFC assessment includes a "sit/stand option," limits Plaintiff's pushing/pulling, and restricts her climbing, crouching, balancing, stooping, crawling, and reaching.  (Tr. at 16.)

Plaintiff argues that this RFC assessment fails to reflect the same degree of impairment assessed by Dr. Lary.  But  Dr. Lary simply states that Plaintiff's abilities in the above-mentioned areas were "impaired"; no degree of limitation is specified.  Just as the ALJ noted, Dr. Lary's assessed limitations lack specificity.  The ALJ's determination of Plaintiff's RFC may, in fact, be consistent with Dr. Lary's conclusions; but the general nature of his assessment does not allow for such a comparison.

At any rate, the ALJ was not bound to follow Dr. Lary's assessment, as Dr. Lary was not a treating physician. *See McSwain*, 814 F.2d at 619.  While the ALJ may well have based his RFC largely on the assessment of Dr. Lary, only that which the ALJ found to be credible was necessarily included. For the same reason, Plaintiff's assertions that the "hypothetical posed to the Vocational Expert was incomplete and improper"(Doc. 8 at 20) fails as well.

"The ALJ [is] not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Comm'r,* 363 F.3d 1155, 1160 (11th Cir. 2004).  For the foregoing reasons, Plaintiff's second contention is without merit.

      C.     Plaintiff's Allegations of Pain.

      Plaintiff's third contention is that the ALJ's evaluation of her subjective complaints of pain was improper.   Specifically, she alleges that "the ALJ failed to properly apply 42 U.S.C. § 423(d)(5)(A) and this matter is due to be reversed as the testimony of the Plaintiff must be accepted as true."  (Doc. 8 at 28.)  But nowhere does § 423(d)(5)(A) state that a plaintiff's subjective testimony must be "accepted as true."  To the contrary, it states that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."  While "it is established that pain alone can be disabling, even when its existence is unsupported by objective evidence," *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987), a finding of disability based upon pain does require "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from

that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir.1995) (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983)). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but "broad findings that [a claimant] lacked credibility . . . alone are not enough to enable us to conclude that [the ALJ] considered her medical condition as a whole." *Foote*, 67 F.3d at 1562 (quoting *Jamison v. Bowen*, 814 F.2d 585, 588-90 (11th Cir.1987)).

In this case, the ALJ found that Plaintiff met the first prong of the Eleventh Circuit's pain standard, acknowledging the existence of "the claimant's medically determinable impairments." (Tr. at 17.) He found, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (*Id.*) The ALJ then engaged in a review of the specific facts which supported his determination.

The ALJ found that Plaintiff possesses the ability to "perform[] activities when she needs to do so." (*Id.*) He noted her 5/5 muscle strength in all muscle groups, her good handgrip, normal gait, and her ability to heel and toe walk, sit, kneel, squat, and arise without difficulty.[5] (*Id.* at 17, 18.) Plaintiff herself stated that she continued to exercise every night until after her second surgery. (*Id.* at 52.) The ALJ found that, by her own testimony,

---

[5]Having argued in her second point that Dr. Lary's opinion was improperly ignored by the ALJ, Plantiff now asserts that it was not, but should have been. Plaintiff contends that "substantial evidence does not support either the rejection of [Dr. Lary's] opinion or the rejection of the Plaintiff's pain testimony due to the report of Dr. Lary." (Doc. 8 at 25.) This assertion is as incorrect as it is illogical: the weight afforded to Dr. Lary's opinion is entirely consistent with the ALJ's reliance on it here to discredit Plaintiff's pain testimony.

Plaintiff is able to drive a vehicle, cook simple meals, play video games, and watch television, each of which "require some degree of concentration that is not consistent with the extreme pain that the claimant alleges." (*Id*. at 17) Plaintiff complained of difficulty concentrating while reading, but the ALJ found it "difficult to attribute" this to her pain as opposed to her limited education.[6] (*Id.*) The ALJ found the alleged "numbness and tingling in her hands" to be discredited by Dr. Aggerwal's conclusions following an EMG test, indicating a lack of medical basis for the alleged symptoms. (Tr. at 17, 268.) In finding the extent of Plaintiff's shoulder impairment to be less than she alleged, the ALJ relied on medical tests conducted by Dr. Stacey Tapscott. (Tr. at 18, 400.) Plaintiff's allegations of mental limitations and social problems were found to be countered by Dr. Petrella's opinion that Plaintiff would be able to "understand, carry out, and remember simple instructions in a work setting," and would experience only "mild to

---

[6]Plaintiff here asserts that her reading difficulties are entirely due to pain, and that "the ALJ's speculation that it is a lack of education is not supported by substantial evidence." But several places in the record support the ALJ's finding. Plaintiff herself asserted at the hearing that she quit school "a week into [her] 8th grade." (Tr. at 40.) Dr. Petrella assessed Plaintiff's attention and concentration as "poor," and did not attribute this to Plaintiff's pain. Rather, the report includes Plaintiff's statement saying "I know I always had a learning problem—my daughter has it too." (Tr. at 352.)

moderate problems responding to work pressures due to a mood disorder."

(Tr. at 18, 354.)  In addition to the above reasons, the ALJ noted that, since

taking Neurontin, Plaintiff's pain had been reduced from an "8-10/10 to "3-

5/10."  (Tr. at 17, 51.)  At the hearing, Plaintiff described her pain as

"manageable, under control," and "not severe" since taking Neurontin.  (*Id.*

at 51, 59.)

Far from simply asserting a "broad finding," the ALJ articulated

specific reasons which support his conclusion that Plaintiff's "allegations

concerning the extent and intensity of her pain [are] not entirely credible."

(Tr. at 17.)  It appears to the Court that the ALJ specifically addressed

Plaintiff's allegations of pain in his opinion and that he provided reasonable

and explicit reasons for rejecting her testimony.  As these reasons find

substantial support in the record, the Court is not at liberty  to re-weigh the

evidence or substitute its judgment for that of the Commissioner.  "A clearly

articulated credibility finding with substantial supporting evidence in the

record will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562.

IV.    Conclusion.

Upon a thorough review of the administrative record, and after considering all of Ms. Pruett's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law.  A separate order will be entered.

Done this 4th day of November 2009.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**